**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 10 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TAMARA ELISE RUBIN, | No. 22-35640 |
| Plaintiff-Appellant, | D.C. No. 3:19-cv-01377-IM |
| v. | |
| STATE OF OREGON; et al., | MEMORANDUM* |
| Defendants-Appellees, | |
| and | |
| SAM LEINEWEBER; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted December 5, 2023
Portland, Oregon

Before: NGUYEN and MILLER, Circuit Judges, and MONTALVO,** District
Judge.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Frank Montalvo, United States District Judge for the
Western District of Texas, sitting by designation.

Plaintiff-Appellant Tamara Elise Rubin appeals from the district court's grant of summary judgment to Oregon Department of Justice investigator Kris Kalanges on her claim that Kalanges violated her constitutional rights by deliberately fabricating evidence against her. We have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment based on qualified immunity de novo. *Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021). We affirm.

Rubin once served as executive director of the Lead Safe America Foundation ("LSAF"). Following the Oregon DOJ's issuance of a civil investigative demand, Kalanges was tasked with investigating suspicious cash flows between Rubin, her husband, and LSAF's bank accounts. As part of his investigation, Kalanges created a spreadsheet showing that Rubin and her husband had received roughly $450,000 from LSAF between 2011 and 2016. At the time Kalanges created his spreadsheet, Rubin was unable to provide records validating the legitimacy of these transactions. Kalanges forwarded his spreadsheet to the Oregon Department of Human Services and the IRS, which both opened their own investigations. Ultimately, Kalanges's spreadsheet was used in a "Criminal Report" sent to the Multnomah County District Attorney's office. Kalanges testified before a grand jury on November 1 and 9, 2017, and an indictment was returned on November 13. All criminal charges against Rubin were later dropped.

Rubin subsequently brought several 42 U.S.C. § 1983 claims and a state-law

2

claim against Kalanges and other state agents.  The district court granted summary judgment as to every claim and dismissed the case.  Rubin timely appealed, challenging the district court's ruling as to her deliberate fabrication of evidence claim against Kalanges's post grand-jury conduct.[1]

"In determining whether a state official is entitled to qualified immunity in the context of summary judgment, we consider (1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was 'clearly established at the time of the violation.'"  *Sandoval v. County of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021) (quoting *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019)).  Rubin argues that Kalanges deliberately fabricated evidence because he knew or should have known, following his grand jury testimony, that Rubin was innocent.

We recognized a constitutional right not to be subject to criminal charges on the basis of deliberately fabricated evidence in *Devereaux v. Abbey*, 263 F.3d 1070,

---

[1] In her briefing, Rubin originally appealed the district court's grant of summary judgment as to both Mark Kleyna and Kris Kalanges.  Additionally, Rubin appealed the district court's ruling as it pertained to Kalanges's pre-grand jury actions.  However, during oral argument, Rubin's counsel conceded that she is only appealing the district court's grant of summary judgment as to Kalanges's post-grand jury conduct.

3

1074–75 (9th Cir. 2001). To show a violation of this right, a plaintiff must, at a minimum, point to evidence that "supports at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Id.* at 1076. Rubin makes an argument under only the first part of that test.

However, the evidence in the record does not establish deliberate fabrication of evidence on the part of Kalanges. The record evinces that Kalanges at no point *knew* of Rubin's innocence. Rubin's argument that Kalanges should have known of her innocence after he testified is also unavailing. The crux of Rubin's argument is that Kalanges should have updated his analysis with information provided to him after the IRS concluded its investigation. But the record shows that Kalanges was not able to review the allegedly relevant IRS evidence until December 2017—after he testified before the grand jury. He explained that the IRS investigation into Rubin was always concerned with a separate issue than the DOJ's investigation: "the IRS audited her on an issue that was not our issue." And Rubin's claim that Kalanges withheld evidence from the Multnomah County District Attorney is contradicted by the record, which shows that the District Attorney declined Kalanges's offer to share the IRS materials. In addition, Kalanges was no longer investigating Rubin

4

following his grand jury testimony. When asked what he did on the case other than creating the spreadsheet, he answered, "[y]eah, that's pretty much all I have done on the case."

The *Devereaux* test is a stringent one. *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003). "There must be persuasive evidence supporting a conclusion that the proponents of the evidence are aware that evidence is incorrect or that the evidence is offered in bad faith." *Black v. Montgomery Cnty.*, 835 F.3d 358, 372 (3d Cir. 2016), as amended (Sept. 16, 2016) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3rd Cir. 2014)). The record does not contain evidence that Kalanges knew or should have known that Rubin was innocent.

Insofar as Rubin argues Kalanges was under a duty to correct his analysis and advocate Rubin's innocence following his grand jury testimony and his receipt of the IRS materials, she points to no clearly established law establishing such a duty. "For a legal principle to be clearly stablished, it is not necessary that 'the very action in question has previously been held unlawful.'" *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Rather, a clearly established right will be held to exist if "in the light of pre-existing law the unlawfulness [is] apparent." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). *Brady v. Maryland* clearly established that prosecutors must turn over material exculpatory evidence they possess. 373 U.S. 83, 87–88 (1963); *see*

5

*Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1223 (9th Cir. 2015). Here, it is uncontroverted that Rubin possessed the allegedly exculpatory evidence herself. Therefore, Kalanges committed no *Brady* violation, and Rubin points to no "clearly established law" imposing a duty on investigators to advocate the innocence of an accused individual.

The district court properly granted summary judgment.

**AFFIRMED**.